# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | | |
|---|---|---|
| RICHARD SCHULTZ, | ) | CASE NO. 5:25 CV 746 |
| | ) | |
| Plaintiff, | ) | JUDGE JOHN R. ADAMS |
| | ) | |
| v. | ) | |
| | ) | MEMORANDUM OF OPINION |
| MELISSA RUBICK, et al., | ) | AND ORDER |
| | ) | |
| Defendants. | ) | |

This is Plaintiff's third attempt to litigate in federal court issues that arose in the course of his divorce case and state criminal cases.[1] In this action, Plaintiff sues Portage County Domestic Relations Court Magistrate Judge Nancy Morrison, Portage County Municipal Court Judge Melissa Roubic[2], Ohio Attorney General David Yost, and another individual, Pam Rittallo, who he does not identify in the body of the Complaint. He cites to the Americans with Disabilities Act, ("ADA"), 42 U.S.C. §§ 12181-89; however, he does not assert any actual legal claims under the ADA against the Defendants. Instead, he uses this statute as a generic basis for federal subject matter jurisdiction, claiming he has a disability and this entitles him to litigate any claim in federal court. He seeks $ 50,000,000.00 in damages.

Plaintiff also filed an Ex Parte Motion for Restraining Order (Doc. No. 2). That Motion, seeks only to have this Court declare his claims to be meritorious, and award him monetary

---

[1] *See Schultz v. Hanculak*, No. 1:24-cv-00224-CEF (N.D. Ohio Apr. 22, 2024); *Schultz v. Lucci*, No. 5:24-cv-00365 (N.D. Ohio May 30, 2024).
[2] Plaintiff incorrectly identifies this Defendant as Melissa Rubick.

damages without the necessity of proving his case. A temporary restraining order is an extraordinary remedy which should be granted only if the movant carries his or her burden of proving that it is necessary in order to preserve the *status quo* until the case can be decided on its merits. *Overstreet v. Lexington-Fayette Urban Co. Gov't*, 305 F.3d 566, 573 (6th Cir. 2002); *Ray v. Franklin Cnty. Bd. of Elections*, No. 2:08-CV-1086, 2008 WL 4966759, at *1 (S.D. Ohio Nov. 17, 2008). Here, Plaintiff is attempting an end-run to litigation which is not the purpose of a temporary restraining order. The Motion is denied.

## I.    Background

Plaintiff's Complaint is very disjointed and so filled with inflammatory language that it is difficult to decipher. Plaintiff was divorced from his wife in August 2022. *See Schultz v. Hanculak*, No. 1:24-cv-00224-CEF (N.D. Ohio Apr. 22, 2024). It is obvious from the Complaint that these divorce proceedings were very acrimonious. Early in the divorce proceedings, Plaintiff was arrested for and convicted of domestic violence towards his wife. *See State of Ohio v. Richard Schultz*, Case No. 2019CRB03034F (Portage Cty Muni Ct. Jan. 24, 2020). His wife obtained a civil protection order for her and the children in that criminal action. The Domestic Relations Court may also have granted her a protection order against the Plaintiff. After the divorce was over, Plaintiff was prosecuted twice for violating protection orders. *See State of Ohio v. Schultz*, No. 22CRA00768 (Shaker Hts. Mun. Ct. filed Nov. 17, 2022); *State of Ohio v. Schultz*, No. 2022 CRB 02707R (Portage Mun. Ct. June 6, 2023).

Plaintiff appears to dispute this latest conviction in Portage County for violating the civil protection order. The criminal complaint indicates Plaintiff sent his former wife a message threatening her and the children's Guardian Ad Litem with consequences if he was not provided with visitation with the children. He argues that he is innocent of the charges, despite his

conviction at a jury trial, because the parties' divorce decree lifted all restraining orders. He contends Judge Melissa Roubic "decided to hide the evidence and threaten [him] with contempt of court in a jury trial that [he] paid extra to have to not to discuss the state of Ohio divorce decree that was certified in a different state of Ohio court under oath by [Plaintiff's ex-wife]." (Doc. No. 1 at PageID #: 2).

Plaintiff also attacks the divorce proceedings, stating that he was "in federally protected bankruptcy, Chapter 7 protection as well in 2020 and still in the same chapter 7 bankruptcy to this day that cannot close for a multitude of reasons including out of state creditor got ripped off by [his former spouse] whom kept almost all of the assets and all the marital debt was forced on [him]." (Doc. No. 1 at PageID #: 5). He does not offer any other explanation of this statement and does not connect it to any particular Defendant.

Plaintiff alleges that Pam Rittallo threatened him through his divorce proceedings and told him she thought very little of him. Plaintiff does not indicate what official title Ms. Rittallo holds; however, it appears from the context of the allegations that she may have been a domestic relations court judge or magistrate or opposing counsel in his divorce.[3] He claims that while the chapter 7 bankruptcy stay was in place, she "threatened [him] with debtor's prison if [he] didn't pay for the GAL [Guardian ad Litem] and an additional physiological assessment." (Doc. No. 1 at PageID #: 3) He states that his lawyers "relayed that she was out to screw me and did everything possible in court to defraud me. This included painting me falsely as a convicted domestic abuser against [his former spouse]." (Doc. No. 1 at PageID #: 3). He states that "she stuck him with all of the marital debt knowingly violated the bankruptcy stay throughout the

---

[3] It is possible Plaintiff misidentified this Defendant. The Court takes notice that Pamela A. Rintala has presided over domestic relations cases in Portage County, although it is not clear that she had any connection to Plaintiff's case.

divorce threatened [him] for bringing up the violation of federal law and now 5 years after the 2020-chapter 7 bankruptcy is stuck in limbo as all the out of state creditors are still defrauded a clear criminal wire act crimes [sic]." (Doc. No. 1 at PageID #: 3).

Plaintiff contends that Ohio Attorney General David Yost, as a representative of the state of Ohio, robbed him of unemployment benefits. (Doc. No. 1 at PageID #: 3). He provides no other explanation regarding this statement. He contends that this involves public corruption. (Doc. No. 1 at PageID #: 3).

Finally, Plaintiff attacks the 2019 criminal domestic violence proceedings that occurred early in or prior to the initiation of the domestic relations case. He states that he "had [his] children kidnapped from Portage County as the biological father for a crime [he] did not commit, which is causing harm or intending to cause harm to the Johnston household." (Doc. No. 1 at PageID #: 5). He does not provide any other allegations regarding this statement and makes no attempt to connect it to any of the Defendants.

The Complaint contains no discernable legal claims asserted against the Defendants. Plaintiff claims he has federal question jurisdiction generally under the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12181-89, because as a sufferer of long covid, he is a protected individual under the ADA. He contends that the ADA gives him jurisdiction to proceed with any action in federal court. He, however, does not assert an ADA claim against any of the Defendants. He also lists the "Trump Department of Justice Criminal Complaint Case # 590365-DFP against Defendants stripping immunity," violation of federal bankruptcy stay, filing a false criminal affidavit and conviction of completely false charge, "filing false charges (charge stacking) to gain leverage in effort to extort plea deal forcing individuals into bankruptcy," judge shopping, robbery of his cash while he was detained in jail, and corruption,

as a legal basis for his Complaint. (Doc. No. 1 at PageID #: 4). He does not define any of these statements into legal claims and does not connect them to any of the Defendants. He seeks $50,000,000.00 in damages.

## II. Standard of Review

The Court is required to construe Plaintiff's *pro se* Complaint liberally and to hold it to a less stringent standard than one drafted by an attorney. *Spotts v. United States*, 429 F.3d 248, 250 (6th Cir.2005) (citing *Haines v. Kerner*, 404 U.S. 519, 520, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972)). Pursuant to *Apple v. Glenn*, 183 F.3d 477, 479 (6th Cir.1999) (per curiam), district courts are permitted to conduct a limited screening procedure and to dismiss, *sua sponte*, a fee-paid Complaint filed by a non-prisoner if it appears that the allegations are "totally implausible, attenuated, unsubstantial, frivolous, devoid of merit, or no longer open to discussion." *Apple*, 183 F.3d at 479 (citing *Hagans v. Lavine*, 415 U.S. 528, 536-37 (1974)). Dismissal on a *sua sponte* basis is also authorized where the asserted claims lack an arguable basis in law, or if the district court lacks subject matter jurisdiction over the matter. *Id*. at 480; *see also Neitzke v. Williams*, 490 U.S. 319 (1989); *Sistrunk v. City of Strongsville*, 99 F.3d 194, 197 (6th Cir.1996); *Lawler v. Marshall*, 898 F.2d 1196 (6th Cir.1990).

## III. Analysis

Plaintiff has not established a basis for federal subject matter jurisdiction over this case. Federal courts are courts of limited jurisdiction, and, unlike state trial courts, they do not have general jurisdiction to review all questions of law. *See Ohio ex rel. Skaggs v. Brunner*, 549 F.3d 468, 474 (6th Cir. 2008). Instead, they have only the authority to decide cases that the Constitution and Congress have empowered them to resolve. *Id*. Consequently, "[i]t is to be presumed that a cause lies outside this limited jurisdiction, and the burden of establishing the

contrary rests upon the party asserting jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377(1994) (internal citation omitted).

Generally speaking, the Constitution and Congress have given federal courts authority to hear a case only when diversity of citizenship exists between the parties, or when the case raises a federal question. *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987).  The first type of federal jurisdiction, diversity of citizenship, is applicable to cases of sufficient value between "citizens of different states."  28 U.S.C. § 1332(a)(1).  To establish diversity of citizenship, the Plaintiff must establish that he is a citizen of one state and all of the Defendants are citizens of other states.  The citizenship of a natural person equates to his domicile.  *Von Dunser v. Aronoff*, 915 F.2d 1071, 1072 (6th Cir.1990).  The second type of federal jurisdiction relies on the resolution of a federal question.  This type of jurisdiction arises where a "well-pleaded complaint establishes either that federal law creates the cause of action or that the Plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law."  *Franchise Tax Bd. v. Construction Laborers Vacation Trust*, 463 U.S. 1, 27-28 (1983).

Diversity of citizenship does not exist in this case.  Plaintiff does not provide the citizenship of any of the parties; however, they all appear to be from Ohio.

A Plaintiff properly invokes federal question jurisdiction under 28 U.S.C. § 1331 when he "pleads a colorable claim 'arising under' the Constitution or laws of the United States." *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 513 (2006).  Jurisdiction is not defeated by the possibility that the Complaint might fail to state a claim upon which relief may be granted. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 89 (1998) (internal quotation marks and alterations omitted).  However, "[a] claim invoking federal-question jurisdiction under 28 U.S.C. § 1331 ... may be dismissed for want of subject-matter jurisdiction if it is 'immaterial and made

solely for the purpose of obtaining jurisdiction' or is 'wholly insubstantial and frivolous.' " *Arbaugh*, 546 U.S. at 513 n. 10 (quoting *Bell v. Hood*, 327 U.S. 678, 682-83 (1946)). A Complaint may also be dismissed for lack of subject-matter jurisdiction based on the inadequacy of the federal claim when the claim is "totally implausible, attenuated, unsubstantial, frivolous, devoid of merit, or no longer open to discussion." *Apple*, 183 F.3d at 479; *see Steel Co.,* 523 U.S. at 89 (the Court is deprived of subject matter jurisdiction where the Complaint is "so insubstantial, implausible, foreclosed by prior decisions of this Court, or otherwise completely devoid of merit as not to involve a federal controversy.").

Plaintiff's only reference to a federal statute is the ADA. He, however, is not asserting any claims under the ADA, but rather, is claiming general federal subject matter jurisdiction based on a medical condition he believes to qualify as a disability under the ADA. The ADA is not an independent source of federal jurisdiction which allows a disabled person to litigate any claim, including state law claims in federal court. Plaintiff does not allege a single fact that remotely suggests that his medical condition motivated the Defendants to take actions against him. This claim is wholly insubstantial and frivolous and is made solely for the purpose of obtaining federal jurisdiction. *Arbaugh*, 546 U.S. at 513 n. 10; *Apple*, 183 F.3d at 479. It fails to establish a basis for federal subject matter jurisdiction.

Moreover, Plaintiff fails to identify any other federal statute under which he seeks relief against these Defendants. His listing of the "Trump Department of Justice Criminal Complaint Case # 590365-DFP against Defendants stripping immunity," violation of federal bankruptcy stay, filing a false criminal affidavit and conviction of completely false charge, "filing false charges (charge stacking) to gain leverage in effort to extort plea deal forcing individuals into bankruptcy," judge shopping, robbery of his cash while he was detained in jail, and corruption",

do not contain an identifiable federal legal claim that could be brought in a federal civil action against these Defendants. (Doc. No. 1 at PageID #: 4).

Furthermore, Plaintiff has been told in in prior cases filed in this Court that he cannot attack state court judgments or convictions, cannot relitigate issues already decided by state court judges, cannot simply allege an illness or medical condition and conclude that all negative interactions he experiences are a violation of the ADA, and cannot sue judicial officers for decisions with which he does not agree. *Schultz v. Hanculak*, No. 1:24-cv-00224-CEF (N.D. Ohio Apr. 22, 2024); *Schultz v. Lucci*, No. 5:24-cv-00365 (N.D. Ohio May 30, 2024). This is simply a third attempt at challenging various state court judgments asserting grounds that have already been rejected by the Court. The Complaint itself lacks any real federal cause of action and is "totally implausible, attenuated, unsubstantial, frivolous, devoid of merit, or no longer open to discussion" *Apple*, 183 F.3d at 479.

Finally, the Court takes notice that Plaintiff included a claim in his Complaint that he knows to be false and attached documents to the Complaint in an attempt to mislead the Court. Specifically, he attached: (1) a criminal complaint from the City of Streetsboro, Ohio dated December 6, 2019 stating that Plaintiff "did knowingly cause or attempt to cause physical harm to a member of the Johnston or [sic] household" (Doc. No. 1-2 at PageID #: 8); and (2) a letter dated March 26, 2025 from an individual named Kyle Johnston claiming that he has never met Richard Schultz, has "no clue who he is," and neither he nor his family were ever threatened or assaulted by him. (Doc. 1-1 at PageID #: 7). Plaintiff uses this letter to argue that he is innocent of the charge in the 2019 criminal complaint.

The copy of the criminal complaint that Plaintiff attached as an exhibit in this case, however, was strategically photographed to hide pertinent information. There is far more to the

document than Plaintiff provided. The next sentence in the criminal complaint, which was cut out of Plaintiff's photograph, is "To Wit: did grab both arms and push *her* to the ground resulting in injury to both upper arms." *See State of Ohio v. Richard Schultz*, Case No. 2019CRB03034F (Portage Cty Muni Ct. Jan. 24, 2020)(Doc. No. 1)(emphasis added). The charge is listed as "domestic violence" and the complaint indicates the act occurred on December 6, 2019 at 1744 Dunlap Dr., Streetsboro, Ohio, which was the address of the home Plaintiff shared with his then wife. The word "Johnston" in the first sentence of the complaint does not fit grammatically, and is clearly a typographical error when viewed in context with the rest of the document.

Moreover, that criminal complaint led to charges being filed against Plaintiff in the Portage Municipal Court on December 9, 2019 for a first degree misdemeanor charge of domestic violence, and two felony charges of tampering with evidence, and disrupting public services. *Id*. The prosecution alleged that Plaintiff grabbed his wife by both arms, pushed her to the ground, took her cell phone, deleted videos of the incident and left the scene before police arrived. *Id*. The Municipal Court issued a domestic violence protection order for his wife and their two children. He pled no contest to the misdemeanor domestic violence charge on December 13, 2019, in exchange for dismissal of the felony charges. *Id*. The Court sentenced him to 180 days in jail, with 3 days jail credit and 177 days suspended provided that he completed anger management classes. *Id*

Given the totality of the events that transpired and his subsequent criminal prosecution and conviction, it is highly improbable that Plaintiff genuinely believes he was convicted of threatening a person named Johnston, rather than being convicted of assaulting his former spouse. Furthermore, the letter purporting to be from an individual named Kyle Johnston is questionable given the context. The charge listed on the criminal complaint is domestic

violence.  Domestic violence by definition involves a family or household member of the perpetrator.  Ohio Rev. Code § 2919.25.  The author of the letter, however claims he "never met Richard Schultz" and has "no clue who he is," (Doc. No. 1-1 at PageID #:7) which eliminates him as a family or household member.  The criminal complaint clearly refers to a female victim.  Kyle Johnston appears to be male.  Finally, the typographical error mentioned only a surname, and did not list a first name.  None of the other documents in the criminal case contain a mention of Johnston.  With all of these context clues, it is incredulous that a person named Kyle Johnston would discover the criminal complaint for domestic violence against a person he has never met and who is a total stranger to him and assume that he was the alleged victim in the complaint.  Instead it appears that Plaintiff was attempting to capitalize on a typographcal error to deceive or mislead the Court.  Plaintiff is cautioned that knowingly presenting false or misleading arguments to the Court is not tolerated, and could lead to the imposition of sanctions.  FED. R. CIV. P. 11(B).

Based on Plaintiff's conduct in this case and other cases filed in this Court, it is apparent that his repetitive pleadings are not submitted in an attempt to gain real relief.  Rather, it appears he is simply seeking to harass the Defendants or disrupt state court proceedings.  This is not an appropriate use of the Court's time and resources,

Up to this point, the Courts in this District have been tolerant of Plaintiff's *pro se* filings; however, there comes a point when we can no longer allow Plaintiff to misuse the federal judicial system. The filing of frivolous lawsuits and motions strains an already burdened federal judiciary. "Every paper filed with the Clerk of ... Court, no matter how repetitious or frivolous, requires some portion of the [Court's] limited resources. A part of the Court's responsibility is to see that these resources are allocated in a way that promotes the interests of justice." *In re*

*McDonald*, 489 U.S. 180, 184 (1989). Our ability to perform our duties is compromised when we are forced to devote limited resources to the processing of repetitious and frivolous filings. *In re Sindram*, 498 U.S. 177, 179-80 (1991).

After a careful review of Plaintiff's litigation in the Northern District of Ohio, this Court has determined that it is necessary to impose some restrictions on Plaintiff's ability to continue on in this manner. As an initial matter, Plaintiff is enjoined from filing any additional documents in this case. The Court will not entertain any post judgment Motions. The Clerk's Office is instructed to return any such documents, unfiled, to the Plaintiff.

In addition, Plaintiff is permanently enjoined from filing any new action in this Court without first seeking and obtaining leave of court. He must file a "Motion Pursuant to Court Order Seeking Leave to File" and he must attach to that Motion: (1) any new pleading he proposes to file and (2) a copy of this Order. The Motion shall be filed in a miscellaneous case. The Court may deny any Motion for Leave to File if the proposed document is frivolous, vexatious or harassing. If the Motion is denied, the document shall not be filed. The Clerk's Office shall not accept any document submitted by Plaintiff for filing in this Court unless it is specifically identified as a "Motion Pursuant to Court Order Seeking Leave to File," and unless it contains the proposed document he seeks to file and a copy of this Order. The Clerk's Office shall not accept any other documents for filing unless and until leave to file is granted. Further, Plaintiff's failure to comply with the terms of this Order shall be sufficient ground for this Court to deny any Motion for Leave to File and may be considered an act of contempt for which he may be punished accordingly.

In addition, if Plaintiff files a Complaint in another federal court or a state court and that action is either transferred or removed to this Court, the action automatically will be stayed, and Plaintiff shall have fifteen (15) days from the date of the transfer or removal to file a Motion for Leave to Proceed.  If Plaintiff does not file such a Motion for Leave to Proceed or if the Court deems that the proposed action is frivolous, leave to proceed will be denied and the case will be dismissed without prior notice.  During the time that the case is stayed, the Court shall not accept any documents for filing, except a Motion for Leave to Proceed, filed by Plaintiff.  Moreover, Plaintiff is cautioned that if he continues to file patently vexatious and frivolous actions after the date of this Order, this Court may impose additional sanctions.

### IV.     Conclusion

Accordingly, this action is dismissed for lack of subject matter jurisdiction.  *Apple v. Glenn*, 183 F.3d 477, 479 (6th Cir.1999).  Plaintiff's Ex Parte Motion for Restraining Order (Doc. No. 2) is denied.  The Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that an appeal from this decision could not be taken in good faith.  Furthermore, Plaintiff is enjoined from filing any additional documents in this case, including post judgment Motions, and is permanently enjoined from filing new actions in this Court without first obtaining leave of court as et forth in this Memorandum of Opinion and Order.

IT IS SO ORDERED.

DATE: April 28, 2025                                       /s/ John R. Adams
                                                                         JOHN R. ADAMS
                                                                         UNITED STATES DISTRICT JUDGE